**MAZZA, Plaintiff-Appellant, v GREENSTEIN, Defendant-Appellee.**

Ohio Appeals, First District, Hamilton County.

Nos. 6926 and 6927. Decided March 8, 1948.

Messrs. Ginocchio & Ginocchio, Cincinnati, for plaintiffs-appellants.

John M. McCaslin, Cincinnati, for defendant-appellee.

## OPINION

By MATTHEWS, PJ.:

One of these cases is by a minor to recover damages on account of personal injuries received in a collision between a bicycle on which he was riding and an automobile operated by defendant's employee. The other action is by the minor's father to recover for loss of services and expenses incurred in the treatment of the son's injuries. By agreement, the two cases were tried as one in the Common Pleas Court and are presented to this court on the same record.

At the close of all the evidence the court instructed verdicts for the defendant, overruled the motions for a new trial and entered judgments for the defendant in each case. It is from those judgments that these appeals are presented.

The cause of action as presented in the son's petition is as follows:—That he was a minor eleven years of age, that on March 7th, 1946, at about 5:15, P. M., he was riding a bicycle in an easterly direction down grade on St. Lawrence Avenue in the City of Cincinnati, that at that time an employee of defendant was backing a Plymouth Sedan automobile in a northerly direction on a private driveway on premises abutting on St. Lawrence Avenue, that as plaintiff was proceeding on the south side of St. Lawrence Avenue the said employee suddenly and without warning backed the Plymouth automobile out of the driveway and negligently and unlawfully struck and collided with plaintiff and his bicycle with great force, damaging the bicycle and injuring him. The plaintiff alleged that the collision was caused solely through defendant's negligence in operating his automobile without due regard for the safety of the plaintiff in the lawful use of a public highway, in failing to give any warning, in entering upon the public highway from a private driveway without ascertaining that the same could be done safely, in failing to keep a proper lookout, in failing to have the automobile under proper and reasonable control so as not to endanger the plaintiff in the use of the street, in failing to stop or change his course so as to avoid striking the plaintiff, and in failing to yield plaintiff the right of way, and in failing to exercise reasonable care in backing out of the driveway.

The question presented by this appeal is whether the record shows any substantial evidence in support of the alleged cause of action for submission to the jury. We, therefore, turn to the evidence for the answer to this question, and in

doing so we emphasize those portions of the evidence favorable to the plaintiff's cause.

The plaintiff testified that:

"A. I was riding a bicycle.

"Q. As you started to go down the last hill there on St. Lawrence, before you get to 4331, how were you riding your bicycle?

"A. I was riding using my coaster brakes and just riding down the hill.

"Q. Which way were you looking?

"A. I was looking straight ahead.

"Q. Did you see any automobiles in front of you in the street?

"A. No, I didn't see any.

"Q. Did you see any automobiles anywhere around the street?

"A. No.

"Q. Tell us what happened as you passed 4331?

"A. All at once something —— I didn't know —— it popped out and I saw something black and when I woke up I was laying on the ground.

\* \* \*

"Q. As I understand your testimony you never saw this automobile until you were getting up off the ground?

"A. Yes.

"Q. Is that right?

"A. Yes.

"Q. That is true, isn't it?

"A. Yes.

"Q. Were there any other automobiles either going up or down St. Lawrence Avenue?

"A. No.

"Q. Were there any other automobiles parked on either side of St. Lawrence Avenue at this time?

"A. No.

"Q. Were you pumping or coasting down?

"A. I was coasting and using my coaster brakes.

"Q. You were coasting and using your coaster brakes and you say you were just 1-½ feet from the center of the street?

"A. About that.

THE COURT: To the right of the center he says.

"Q. Is it to the right or left of the center?

"A. To the right.

"Q. How can you recall so accurately you were about 1-½ feet from the center?

"A. I remember I was more on one side than the other.

"Q. So that being the case you estimate the distance you were to one side as 1-½ feet?

"A. I say about that.

 *   *   *

"Q. Was there any occasion for you to ride out in the center of the street? Was there anything to prevent you from riding nearer the curb?

"A. No. You are supposed to ride in the street.

"Q. My question was—Maybe you didn't understand it. Why were you riding out near the center rather than nearer the side or curb?

"A. I don't know; I was just riding that way.

"Q. Did you see this automobile at any time before you were getting up off the ground?

"A. I didn't see it once.

"Q. You didn't see it when it was standing over in the driveway or on the sidewalk or in the gutter or any place else?

"A. When I got up off the ground I saw it.

"Q. Then is the first time you knew there was any automobile in the neighborhood, is that correct?

"A. Yes.

"Q. As you were going down this St. Lawrence Avenue did you say you were looking straight ahead?

"A. Yes.

"Q. Was there anything to obstruct your view as you were looking ahead and coming down St. Lawrence Avenue from seeing a car in the driveway or on the sidewalk or entering St. Lawrence Avenue?

"A. No; I was just looking straight ahead.

"Q. What I am asking you is this, you say you were looking straight ahead and coming approximately right down the middle of St. Lawrence Avenue within a foot or two of the middle?

"A. Yes.

"Q. Was there anything to prevent you from seeing an automobile standing or moving out of a driveway?

"A. No.

"Q. You don't know what part of the machine and your bicycle came together, do you?

"A. No.

Mrs. Fensch, called by the plaintiff, testified that she

looked from the window of her residence fronting on St. Lawrence Avenue, just after this collision, and that:

"Q. And where was the automobile? Whereabouts on the street was the automobile?

"A. Well I would say it was approximately a foot from the center of the street.

"Q. And is that a wide or narrow street?

"A. Well it is a narrow. It is more narrow in that part than it is in the other part of the street.

"Q. Now how much of the car would you say was in the street? Was the car entirely in the street or was it partly some place else?

"A. Well I would say it was approximately half way. It was about on a half turn—you know how, when you turn out of the driveway and you back up—I guess he was going up the street. Oh, I would say, well, the back end, from the one side, was approximately a foot from the center of the street."

It was admitted that the defendant's employees were engaged in delivering groceries and for this purpose had driven the automobile on to the private driveway leading to the garage attached to or forming a part of the residence and that the automobile had remained parked there while one of the employees took the groceries to the rear door. When he returned the operator operated the automobile down the driveway and how far it was backed into the street was in dispute. It was also admitted that the yard adjacent to the driveway was at a higher level than the driveway, thereby obstructing to an extent in dispute the view of the automobile when it was parked on the driveway. It is clear from the photograph of the premises that if the automobile was parked wholly on the driveway, only a small part of the top was visible across the yard. One of the defendant's employees testified that when the automobile was parked the rear part extended onto the sidewalk and that after the groceries were delivered they backed the automobile, so that it extended 63 inches into the street, where it was stopped, and that it was stationary there, and they were waiting for the plaintiff (whom they saw approaching) to pass when he rode his bicycle against the right rear fender of the automobile. The other employee corroborated this in the main, excepting that his testimony tended to prove that the automobile was parked entirely on the driveway.

The driver of the automobile testified that while the automobile was standing on the driveway and before he started to back it he saw the minor plaintiff approaching on his bicycle and that he was 400 feet away at that time and that when he stopped with the rear wheels in the gutter, he saw him again when he was 100 feet away, and that he was on the left side of St. Lawrence Avenue, and looking to his left and did not have his hands on the bicycle bars.

The defendant's automobile was fifteen feet long.

St. Lawrence Avenue was 21 feet, 1-½ inches wide from curb to curb at this point. The sidewalk was five feet wide. There was an unpaved strip between the sidewalk and the curb, concerning the width of which the evidence seems to be conflicting. The father of plaintiff testified that it was 5 feet, ½ inch wide, and that the curb was 23 inches wide. No witness gave any greater dimension.

The trial court concluded that this evidence had no substantial tendency to prove any negligence on the part of the plaintiff directly causing this collision and his injuries, and, that, therefore, no issue of fact was presented for submission to the jury.

Appellee's counsel cites **Winkler v City of Columbus, 149 Oh St, 39,** holding that where a plaintiff testifies one way on direct examination and contrariwise on cross-examination, showing contributory negligence; he is bound by whichever statement shows negligence on his part and cannot recover if such negligence directly contributes to his injuries. We follow this rule in evaluating the plaintiff's own testimony, although we find no actual conflict.

We also apply the rule that he, the plaintiff, is entitled to every reasonable inference to be drawn from his own testimony as well as from the testimony of other witnesses and the circumstances.

Accepting the plaintiff's testimony as true, as the trial court was obliged to do in passing on the motion for an instructed verdict, he was proceeding along St. Lawrence Avenue on his right side in a lawful manner about one and one-half feet from the center of the street. He was looking forward and saw no automobile in the street or any other obstruction in his path, until the very instant of the impact of his bicycle with some obstacle which he later learned was the defendant's automobile operated by his employees.

This testimony certainly raises no inference of negligence on plaintiff's part. Plaintiff—minor— was a little under eleven years of age, but if he had been an adult and held to

the standard of reasonable care applicable to him as an adult, this testimony would have raised no inference of negligence against him. However, we believe the law of Ohio still is that a minor eleven years of age is only charged with that degree of care which children of the same age, education, and experience, or ordinary care and prudence are accustomed to exercise under the same or similar circumstances. **29 Ohio Jur., 560, et seq.; Cleveland, C. C. & St. L. Ry. Co. v Grambo, 103 Oh St, 471.**

Certainly, the plaintiff—minor—looking ahead and seeing no obstruction in his path had a right to conclude that he could continue in a lawful manner along that path with safety to himself and without danger to others. No injury could happen to him or to any other person in so doing, except by a totally unforeseen and unforeseeable occurrence, resulting from the intervention of some other human agency.

We conclude that it cannot be said as a matter of law that the plaintiff—minor—was barred from recovery by reason of his own negligence.

Now let us consider the defendant's theory of the case and the conduct of his employees.

They were emerging from a private driveway onto a public street. They must be taken to have known that §6307-43 GC, required them to stop and yield the right of way to all approaching traffic. They also must be taken to have known that §6307-37 GC, required them to give ample warning before backing and while backing to exercise vigilance so that others would not be injured. And, as they testified, they knew the plaintiff—minor—was approaching and would pass them in his course, the law required that they exercise reasonable care that harm not come to him by their presence. If, as they testified, they saw the eleven year old plaintiff coasting down the hill on the left side of the street without having his hands on the bicycle bars and not looking where he was going, would a reasonable prudent person have backed into the street, thereby reducing the width of his path of safety by more than five feet, without giving any warning? If we accept the minor's testimony that he was on the right side of the street and accept defendant's employees' testimony as to the location of the automobile in the street, it left the minor a space of five feet wide in which to pass. And if we accept the plaintiff's testimony as to where the collision occurred the automobile was backed so far into the street as to entirely block his passage.

But it is said that a person is required by law to look where he is going and if he does not he is negligent and that it is

not sufficient for him to say that he looked and did not see because the law charges him with seeing the obvious. And that is true. But the law does not require him to admit the presence of an object for the purpose of charging him with seeing it. The presence of the automobile at the point of collision until the instant of collision was disputed. As the minor came down the hill he looked forward and did not see the automobile in the street. That is evidence that it was not there. Negative testimony is just as competent as positive testimony. The probative value of both depends on the circumstances. **20 Am. Jur., 1037, et seq.** It certainly is not evidence that it was there and that he failed to see it.

There is no inconsistency in asserting that the automobile was not in the street as the minor approached and that it was there when he arrived at the point of collision. The automobile was a mobile object under the control of the defendant's employees. They had the power to move it into the minor's path. The fact that the automobile was on the driveway and immediately thereafter in the minor's path and that at all times the defendant's employees had control of it is circumstantial evidence, that they moved it into the path of the bicycle. It is rare indeed that an action ex delicto is tried without frequent recourse to circumstantial evidence. 20 Am. Jur., 259, et seq. The fact that the automobile was on the driveway as the minor approached and that he did not see it, does not destroy the probative value of his testimony that he looked straight ahead and saw no automobile or other traffic in the street. It was natural for him to look to see whether it was safe for him to proceed and to pay little, if any, attention to objects and movements outside his path.

On the whole record we are of the opinion that there was substantial evidence of defendant's negligence directly causing the minor-plaintiff's injuries and that whether his conduct met the standard of care required of a boy of his age, intelligence, and experience, and, if not, whether his failure to exercise such care contributed to the collision were all issues of fact to be determined by the jury. We, therefore, conclude that the court erred in instructing the jury to return verdicts for the defendant.

We find no other error upon the record.

For these reasons, the judgments are reversed and the causes remanded for further proceedings, according to law.

MATTHEWS, PJ, ROSS & HILDEBRANT, JJ, concur in syllabus, opinion and judgment.